```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KAREN McFADDEN,

                Plaintiff,              MEMORANDUM & ORDER
                                        08-CV-5187(JS)(WDW)
        -against-

CLARKESON RESEARCH, INC., CLARKESON
RESEARCH, INC. PENSION PLAN, and
BRIAN BORNSTEIN,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:  Neil Frank, Esq.
                Peter Arcadio Romero, Esq.
                Stephanos Zannikos, Esq.
                Frank & Associates, P.C.
                500 Bi-county Boulevard, Suite 112N
                Farmingdale, NY 11735

For Defendant:  Joseph M. Labuda, Esq.
                Netanel Newberger, Esq.
                Milman Labuda Law Group, PLLC
                3000 Marcus Avenue, Suite 3W3
                Lake Success, NY 11042
```

SEYBERT, District Judge:

Plaintiff Karen McFadden ("Plaintiff" or "McFadden") sued Defendants Clarkeson Reaserch, Inc. ("Clarkeson"), Clarkeson Research, Inc. Pension Plan (the "Plan"), and Brian Bornstein (collectively, "Defendants") to impose civil penalties for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Specifically, Plaintiff alleges that Defendants failed to provide her with information about her pension plan in violation

of ERISA's Section 1024(b).

Pending before the Court are Plaintiff's and Defendants' cross-motions for summary judgment. The Court previously denied these motions without prejudice in light of an arbitration agreement between the parties that surfaced in a related case. (See Docket Entry 31.) Thereafter, Plaintiff and Defendants explained that they learned of the arbitration agreement after discovery was completed in this case and renewed their request that the Court address summary judgment on the merits. (Docket Entry 32.) For the reasons that follow, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion is DENIED.

BACKGROUND

The relevant facts in this case, viewed in Plaintiff's favor and drawing every reasonable inference on her behalf, establish that Clarkeson is a small bond brokerage company in Oyster Bay, New York. Plaintiff worked at Clarkeson as Bornstein's administrative assistant from approximately September 2000 until she was terminated in May 2008. The Plan is Clarkeson's employee pension plan, for which Bornstein is the administrator. (Deft. 56.1 Stmt. ¶ 4.) Economic Group Pension Services, Inc. ("Economic Group") is the Plan's actuary. (Deft. 56.1 ¶ 5.)

2

On August 26, 2008, Illana Sudock, a legal secretary to Plaintiff's counsel, Frank & Associates, called Bornstein and asked him to provide Plaintiff's pension plan documents and rollover forms. (Pl. 56.1 Stmt. ¶ 8, Pl. 56.1 Cntr-Stmt. ¶ 12.)[1] It is undisputed that during this phone call, a colleague of Ms. Sudock's named "Mr. Frank" told Bornstein: "I'm gonna sue you, you little prick." (Deft. 56.1 Stmt. ¶ 15.)

That same day, Plaintiff's counsel faxed a letter asking Bornstein to provide Plaintiff with the Plan's Summary Plan Description, the value of her pension account to date, and all necessary rollover papers and forms. (Pl. 56.1 Stmt. ¶ 11.) Bornstein received this letter, but he did not respond either to Plaintiff or to Frank & Associates. (Id. ¶¶ 12, 16.) Bornstein did, however, prepare a letter that day asking the Plan's actuary what he had to do to comply with his legal obligations vis-à-vis Plaintiff. (Deft. 56.1 Stmt. ¶ 17.)

The next day, August 27, 2008, Plaintiff sent Bornstein a supplemental request for the summary plan description, plan documents, forms 5500 filed with the

---

[1] There are two sets of papers before the Court: Plaintiff's and Defendants' motions for summary judgment. Plaintiff's Local Rule 56.1 Statement in support of her motion is cited as "Pl. 56.1 Stmt." and Defendants' counter-statement is cited as "Deft. 56.1 Cntr-Stmt." Defendants' Local Rule 56.1 Statement in support of their motion is cited as "Deft. 56.1 Stmt." and Plaintiff's counter-statement is cited as "Pl. 56.1 Cntr-Stmt."

3

Department of Labor and the Internal Revenue Service since the Plan's inception, annual summary reports, the value of Plaintiff's vested benefits as of the date of her termination, and the paperwork necessary to rollover the funds to her new Individual Retirement Account ("IRA"). (Pl. 56.1 Stmt. ¶ 14.) Bornstein received this letter, too, but again did not respond either to Plaintiff or Frank & Associates. (Id. ¶¶ 15-16.)

Less than two weeks later, on September 8, 2008, Bornstein sent the Plan's actuary a letter with information it had requested concerning Plaintiff's salary and dates of employment. (Deft. 56.1 Stmt. ¶ 18.) With this information in hand, it took the actuary two months to calculate the full amount of Plaintiff's pension entitlement.[2] (Id. at ¶ 19.)

In November, Bornstein sent Plaintiff the documents calculating the amount of her pension entitlement. (Deft. 56.1 ¶ 20.) On November 21, 2009, Plaintiff signed forms rolling over her pension into her IRA. (Pl. 56.1 Cntr-Stmt. ¶ 21.) In

---

[2] Plaintiff explains that her pension entitlement for the period from December 28, 2004 through November 30, 2007 had already been calculated ahead of her discharge from Clarkeson, and that the only calculation remaining to be performed was the amount of her entitlement for the period from December 1, 2007 through May 9, 2008. (See Pl. 56.1 Cntr-Stmt. ¶ 19.) In any event, the Court does not think this dispute is material; the point is that Plaintiff's pension entitlement was not fully calculated until at least two months after Plaintiff's counsel requested the information from Bornstein.

4

early December, Plaintiff called Clarkeson and spoke to Bornstein's colleague, Brad Winters. Plaintiff asked Winters whether Clarkeson had received the signed rollover forms and whether her funds had been wired. Winters responded that the money would be wired in the next few days. (Pl. 56.1 Cntr-Stmt. ¶ 23.) At no time during this call did Plaintiff ask Winters about obtaining pension plan documents or reference her prior requests for this information. (Deft. 56.1 Stmt. ¶ 25.)

On December 10, 2008, Merrill Lynch rolled over the full amount of Plaintiff's pension entitlement--$48,809.74--into Plaintiff's IRA. (Deft. 56.1 Stmt. ¶ 26.)

Plaintiff sued Defendants two weeks after the roll-over because, notwithstanding the transfer of funds, Defendants had not complied with Plaintiff's request for Plan documents. Defendants did not send Plaintiff the materials she requested in August 2008 until April 3, 2009. (Pl. 56.1 ¶ 23; Pl. Ex. H.) Plaintiff claims that Defendants' failure to timely provide her with Plan documents prevented her from withdrawing money from her pension funds and, as she was unemployed, prevented her from paying rent for September, October and November of 2008. (Pl. 56.1 ¶ 19.) She was threatened with eviction and suffered stress and anxiety. (Pl. 56.1 ¶¶ 20-21.)

Plaintiff's Complaint seeks (1) a declaration that

5

Defendants' conduct "to be in violation of Plaintiff's rights, as secured by ERISA"; (2) an order compelling Defendants to disclose Plaintiff's Plan information; (3) civil penalties of $100 per day that Defendants failed to comply with Plaintiff's request, beginning thirty days after her request; and (4) reasonable attorneys' fees and costs. (Am. Compl. at 4.) Inasmuch as Defendants provided Plaintiff with the requested Plan information in April 2009, Plaintiff's first and second requests are moot.

## DISCUSSION

The Court first sets forth the legal standard governing summary judgment motions and then considers the parties' substantive arguments and Plaintiff's request for attorneys' fees.

I. Legal Standard

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S. Ct. 2505, 2511, 91 L.

Ed. 2d 202, 213 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 257, 106 S. Ct. at 2514-15, 91 L. Ed. 2d at 218. "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

II. Application

The parties sharply dispute whether Defendants violated ERISA by failing to timely provide the requested Plan

7

information. The Court need not reach this issue because, even were it to find a violation, it would not impose a discretionary civil penalty in this case. Further, this case does not merit an award of attorneys' fees or costs.

A. Applicable ERISA Provisions

In relevant part, ERISA requires pension plan administrators to provide information about pension plans when it is requested by plan beneficiaries. Section 1024(b)(4) of Title 29 of the United States Code provides:

> (4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

ERISA also provides for civil penalties that courts may, in their discretion, impose on plan administrators who fail to comply with such requests for information within thirty days. Section 1132(c)(1) provides in relevant part:

> (1) Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is

8

> required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.[3]

It is well-settled that courts have considerable discretion in awarding sanctions under this provision. See, e.g., Katzenberg v. Lazzari, 2011 WL 181522, at *3 (2d Cir. 2011) (unpublished).

B. Defendants' Conduct does not Warrant a Penalty

Even assuming Defendants' conduct violated ERISA, the Court, in its discretion and drawing every reasonable inference in Plaintiff's favor, would not impose a penalty in this case. The factors the Court may consider in evaluating whether ERISA sanctions are appropriate include: (1) whether the administrator acted intentionally or in bad faith; (2) the number of requests made; (3) the length of the delay; and (4) whether the beneficiary was prejudiced. See Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 90 (2d Cir. 2001); Cherry v.

---

[3] The statutory maximum has since been raised from $100 to $110 per diem. See LaVigna v. State Farm Mut. Auto. Ins. Co., 736 F. Supp. 2d 504, 515 (N.D.N.Y. 2010).

Toussaint, 50 Fed. Appx. 476, 478 (2d Cir. 2002). Having considered these factors, the Court finds that sanctions are not justified.

First, the evidence as to intentional or bad faith conduct is equivocal, at best. Drawing every inference in Plaintiff's favor, Defendants' failure to respond to Plaintiff promptly following her lawyer's attempts to obtain Plan information could be construed as evidence of bad faith. This inference is undercut by Defendant Bornstein's letter, sent on the same day as Plaintiff's counsel's first request, asking the Plan's actuaries what he had to do to comply with his legal obligations. (Deft. Ex. A.) This letter prompted the actuary to begin calculating the full amount of Plaintiff's pension entitlement; the parties agree this calculation took two months to complete. It was finalized by November, and Plaintiff obtained her funds in mid-December. At no point until she commenced this suit in late December did Plaintiff renew her August requests for Plan documentation. In short, the Court is not convinced Defendants withheld Plan information intentionally or in bad faith and, in any event, other factors tilt against imposing sanctions.

Second, Defendants did not ignore repeated, persistent requests for the Plan documents. Plaintiff's counsel made two

10

written requests in August, received the Pension rollover forms in November, called Defendants in December to inquire when her money would be transferred, and obtained her pension funds a few days later. Defendants could have reasonably understood the rollover to be the end of this saga, not realizing until Plaintiff filed suit two weeks later that she was pressing her demands for Plan documents.

Third, in the Court's view, the time between Plaintiff's counsel's request in August 2008 and Defendants' providing the Plan information in April 2009 does not justify sanctions where there is not clear evidence of bad faith. See Yoon v. Fordham University Faculty and Administration Retirement Plan, No. 99-CV-11042, 2004 WL 3019500, at *17 (S.D.N.Y. 2004) aff'd 173 Fed. Appx. 936 (2d Cir. 2006) (five-year delay did not warrant sanctions where defendants did not act in bad faith); Plotkin v. Bearings Ltd., 777 F. Supp. 1105, 1108 (E.D.N.Y. 1991) (absent bad faith or prejudice, ten-month delay insufficient to justify sanctions).

Fourth, Plaintiff has not established that Defendants' conduct prejudiced her to a degree justifying sanctions. Plaintiff maintains that she was unable to pay rent for September, October and November 2008 because she was unemployed and, due to Defendants' failure to timely provide Plan

11

documents, she could not access funds in her pension account. As a result, Plaintiff was threatened with eviction. (See Pl. 56.1 Stmt. ¶ 19-20.) There is no evidence Plaintiff was actually evicted, however, and she was able to pay back rent with funds withdrawn from her IRA once they were rolled over. (Pl. Reply at 4, Docket Entry 25.) Plaintiff claims that her inability to pay her bills on time "compounded the stress and anxiety that she experienced" while she was unemployed. (Pl. 56.1 ¶ 21.)

Although it is sympathetic to her situation, the Court finds that any harm caused by Defendants' conduct is insufficient to warrant a penalty. First of all, Plaintiff does not claim that Defendants harmed her during the period between when her pension funds were rolled over (December 10, 2008) and when Defendants disclosed the Plan information (April 3, 2009). Further, she cannot plausibly claim that Defendants prevented her from paying her September rent on time. Plaintiff's lawyer first requested Plan information on August 26, 2008. Assuming this request triggered ERISA's 30-day deadline, Defendants had until September 25, 2008 to timely provide the information and rollover forms, well after Plaintiff's September rent was due.

That leaves the period between thirty days after Plaintiff's first request and the December 10, 2008 rollover--

12

the period when Plaintiff arguably could not pay rent because of Defendants' delay. Plaintiff was never actually evicted, but she was presumably worried about the status of her retirement assets during this time. At least one court has found that "uncertainty surrounding [plaintiff's] retirement plans" can warrant a penalty even where the pension administrator does not act in bad faith. See Cherry v. Toussaint, No. 01-CV-6726, 2003 WL 21767759, at *5 (S.D.N.Y. 2003). Nevertheless, the Court does not view Plaintiff's uncertainty about her pension funds sufficient to justify a penalty in light of the Court's earlier finding that Plaintiff has not shown that Defendants acted in bad faith.

In sum, the Court, in its discretion and taking Plaintiff's facts as true, would nevertheless decline to impose a penalty in this case even if it found that Defendants violated ERISA. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for a discretionary penalty.

III. Legal Fees and Costs

Under ERISA, the Court has discretion to award either party their reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(1). Among the factors the Court should consider are: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an

13

award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 815 F.2d 869, 871 (2d Cir. 1987). In its discretion, the Court declines to award either party any fees or costs.

There are several reasons for the Court's denying fees and costs. <u>First</u>, as discussed above, Plaintiff did not show that Defendants acted in bad faith (factor one). <u>Second</u>, the relative merits of each parties' position were roughly equal (factor four). Although it did not expressly decide, the Court thinks it likely that Defendants violated ERISA by not contacting Plaintiff within thirty days of her lawyer's request for Plan documents. Nevertheless, the Court found that Defendants' conduct did not merit a penalty. <u>Third</u>, this was not a case that conferred a common benefit on a group of plan participants (factor five). <u>Fourth</u>, although not an enumerated consideration, the Court is disturbed by the vulgar and unprofessional threat Plaintiff's counsel made to Defendant Bornstein: "I'm gonna sue you, you little prick." Such behavior is unacceptable among members of the bar.

14

## CONCLUSION

The parties' joint request to renew their fully-briefed cross-motions for summary judgment is GRANTED. For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED. Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.

/s/Joanna Seybert
Joanna Seybert, U.S.D.J.

Dated: May 2, 2011
Central Islip, New York